AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original ☐ Dup

**CLERK'S OFFICE**
**A TRUE COPY**
Dec 14, 2023
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Montreal KELLY<br>DOB: 10/08/1991 | )<br>)<br>) Case No. 23-M-527 (SCD)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the __Eastern__ District of __Wisconsin__
*(identify the person or describe the property to be searched and give its location)*:

Montreal KELLY, DOB: 10/08/1991.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Saliva and epithelial cells (to be taken via a buccal swab).

**YOU ARE COMMANDED** to execute this warrant on or before __12-28-23__ *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to __Hon. Stephen C. Dries__.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: __12-14-23. 2:00 pm__

*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br>Date: _____<br><br>_____<br>*Executing officer's signature*<br><br>_____<br>*Printed name and title* |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

**CLERK'S OFFICE**
**A TRUE COPY**
Dec 14, 2023
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 23-M-527 (SCD)
Montreal KELLY )
DOB: 10/08/1991 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Montreal KELLY, DOB: 10/08/1991.

located in the _____Eastern_____ District of _____Wisconsin_____, there is now concealed *(identify the person or describe the property to be seized)*:
Saliva and epithelial cells (to be taken via a buccal swab)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 856(a)(1) | Maintaining a drug-involved premises. |
| 18 U.S.C. §§ 922(g)(1) & 924 (a)(8); and 924(c) | Felon in possession of a firearm; and Possession of a firearm in furtherance of a drug trafficking crime. |

The application is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Robert Gregory, DEA TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 12-14-23

*Judge's signature*

City and state: Milwaukee, WI      Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT FOR BUCCAL DNA

I, Robert Gregory, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I have over nine years of experience as a law enforcement officer through the Milwaukee Police Department (MPD). I am currently assigned to the North Central High Intensity Drug Trafficking Area (HIDTA) – Interdiction Unit, which is involved in the investigation of offenses involving, but not limited to, narcotics, narcotics trafficking, and individuals prohibited from possessing firearms within the City of Milwaukee. I am a federally deputized Task Force Officer with the United States Department of Justice Drug Enforcement Agency (US DOJ – DEA). I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by the law to conduct investigations of and to make arrests for federal felony arrests.

2. As a Police Officer and a Task Force Officer, I have participated in the investigation of numerous narcotics-related offenses, resulting in the prosecution and conviction of individuals and the seizure of illegal drugs, weapons, United States currency and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations,

1

including physical surveillance, execution of search warrants, undercover operations, analysis of phones and the arrests of numerous drug traffickers. I have also been the affiant of many search warrants.

3. Additionally, I have spoken with other experienced narcotics investigators on numerous occasions concerning the method and practices of drug traffickers and money launderers. Furthermore, I have attended training courses that specialized in the investigation of narcotics trafficking and money laundering. Based on my training, experience, and conversations with other law enforcement officers (LEOs), I am familiar with the ways in which drug traffickers conduct their unlawful drug trafficking activity, including, but not limited to, their methods used to manufacture, distribute, transport, store, and import controlled substances, their methods used to collect and launder trafficking-derived proceeds, their use of code words and numbers to conduct their transactions, their methods for concealing and safeguarding narcotics and narcotics proceeds, and their use of violence and threats of violence to protect their organization. I know and have observed that drug traffickers frequently possess firearms and ammunition to protect their illegal product.

4. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities. I am also familiar with their use of telephones, counter-surveillance, false and/or fictitious identities, and the use of coded language during conversations when referring to narcotics in an attempt to disguise the true meaning of the conversation. Finally, I know that it is common for drug traffickers to maintain evidence of their trafficking, i.e. records, receipts, notes, ledgers,

airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale and distribution of controlled substances, and that they are maintained where the traffickers have ready access to them.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses, records, documents, and other evidence obtained during this investigation.

6. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

## PROBABLE CAUSE

1. The United States, including the North Central High Intensity Drug Trafficking Area, the Milwaukee Metro Drug Enforcement Group, and DEA, are conducting a criminal investigation of Montreal KELLY regarding possible violations of 21 U.S.C. §§ 841(a)(1) (distribution of and possession with intent to distribute controlled substances), 843(b) (illegal use of communication facility), 846 (drug conspiracy), 856(a) (maintaining a drug-involved premises); 18 U.S.C. § 922(g)(1) (felon in possession of a firearm); and 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug

3

trafficking crime).

## Confidential Human Source

2. Case agents have received information concerning the illegal drug trafficking activities of Montreal KELLY from a confidential source (hereinafter "CHS #1").

3. Beginning in June 2023, CHS #1 made statements against CHS #1's penal interest. Thus far, the information provided by CHS #1 has been corroborated by information known to case agents gathered during the course of this investigation, including through independent investigation, various public databases, physical surveillance, and electronic surveillance. According to law enforcement databases, CHS #1 has a criminal history that includes felony drug convictions, misdemeanor convictions including resisting or obstructing, and other drug and fraud offenses resulting in fines. CHS #1 is cooperating for consideration on pending federal drug trafficking charges. Within the context of the information detailed and relied upon for purposes of this affidavit, case agents believe CHS #1 is credible and CHS #1's information reliable.

4. On November 1, 2023, case agents conducted a debrief with CHS #1 during which CHS #1 spoke about a person known to CHS #1 as "Blood." Case agents were aware of a person with the nickname "Blood" that was involved in the distribution of cocaine and heroin in southeastern Wisconsin who they identified as KELLY. Case agents showed CHS #1 a Milwaukee Police Department booking photograph of KELLY, and CHS #1 identified KELLY as the individual CHS #1's knows as "Blood."

4

5. CHS #1 informed case agents that CHS #1 has known KELLY since approximately 2014; however, CHS #1 re-connected with him around September 2021. CHS #1 stated that during the time CHS #1 and KELLY re-connected, KELLY informed CHS #1 that he (KELLY) was involved in the distribution of cocaine and offered to provide cocaine to CHS #1. KELLY brought CHS #1 to his (KELLY's) residence, and CHS #1 described the residence's location to case agents as being a single-family residence on the corner of N. 57th Street and W. Ruby Avenue. Case agents were aware that KELLY's residence is 4503 N. 57th Street, Milwaukee, Wisconsin, the SUBJECT PREMISES, which was at the location CHS #1 described. Using a digital map, case agents showed the SUBJECT PREMISES to CHS #1, and CHS #1 identified the SUBJECT PREMISES as the residence that CHS #1 went to with KELLY. CHS #1 stated during this first interaction at the SUBJECT PREMISES, CHS #1 observed approximately 30 pounds of marijuana in tall blue tinted clear bags, approximately 2 or 3 kilogram-packages of cocaine, and approximately 2 kilogram-packages of fentanyl.

6. According to CHS #1, as a result of the quantity of cocaine and heroin that KELLY was in possession of and would continue to be in possession of, CHS #1 began a drug trafficking relationship with KELLY. CHS #1 stated over the next couple of months following September 2021, CHS #1 entered the SUBJECT PREMISES multiple times a day to pick up between one and four ounces of cocaine from KELLY. CHS #1 stated KELLY would front the cocaine and CHS #1 would come back and pay KELLY around $850 per ounce for the cocaine that CHS #1 picked up. CHS #1 stated that in addition to the cocaine, KELLY fronted approximately 200 grams of pure fentanyl every week to CHS

5

#1. CHS #1 stated that over time KELLY began to require CHS #1 to pick up more than one to four ounces of cocaine at a time to reduce the activity and frequency of visits at the SUBJECT PREMISES in an attempt to avoid law enforcement detection. CHS #1 stated this drug trafficking relationship with KELLY lasted between approximately Fall 2021 and Spring 2023.

7. CHS #1 further stated that on at least eight occasions between the beginning of 2022 and spring of 2023, CHS #1 obtained at least one kilogram of cocaine from KELLY at the SUBJECT PREMISES with an initial price of $29,000, which gradually dropped to $24,000. CHS #1 stated the most fentanyl that KELLY provided was 800 grams at one time. CHS #1 described the cocaine as a white powder substance and was sold to CHS #1 in a pure, uncut form. CHS #1 stated that KELLY also sold the fentanyl to CHS #1 in a pure form and that the fentanyl was either white or had a purple tint.

8. CHS #1 stated KELLY was always in possession of multiple firearms inside of the SUBJECT PREMISES, and the firearms would always be different. CHS #1 recalled observing multiple different handguns and multiple different AR style rifles inside the SUBJECT PREMISES and stated that KELLY is a firearm enthusiast. CHS #1 described one occasion in which CHS #1 observed approximately $200,000 on a table inside the SUBJECT PREMISES.

9. An analysis of phone records for a phone number used by CHS #1 between May 2022 and October 2022 reflects that CHS #1 communicated with a phone number that law enforcement officers believed to be used by KELLY.

## Surveillance

10. Case agents conducted surveillance at the SUBJECT PREMISES on November 10, 2023, at approximately 1:55 p.m. During this surveillance episode case agents observed KELLY's girlfriend/child's mother, identified as Fredricka Rivera (XX/XX/1991), arrive at the residence in a black GMC Yukon bearing WI auto plate ASL2452. Case agents observed KELLY exit from the side/south facing door of the residence and thereafter assisted Rivera in escorting two children from the vehicle and into the residence. Rivera then removed groceries from the vehicle and entered the residence with KELLY. Case agents also observed a white Cadillac CTS bearing WI auto plate ASA2186 parked on the street in front of the residence and in front of where Rivera parked the GMC. A Wisconsin Department of Transportation check of the GMC revealed it is registered to Rivera at the SUBJECT PREMISES. A Wisconsin Department of Transportation check of the Cadillac revealed it is registered to both Rivera and KELLY at the SUBJECT PREMISES.

11. On November 29, 2023, case agents conducted surveillance at the SUBJECT PREMISES and observed the same black GMC Yukon and a white Cadillac Deville bearing WI auto plate AMF3108 parked in the driveway of the residence. At approximately 8:55 a.m., KELLY was observed exiting the residence and proceeded to remove both vehicles from the driveway and parked them in front of the residence and then returned inside the residence. A Wisconsin Department of Transportation check of this Cadillac revealed it is registered to Rivera at the SUBJECT PREMISES.

12. On December 5, 2023, case agents conducted surveillance at the SUBJECT PREMISES. At approximately 10:29 a.m., case agents observed KELLY arrive at the residence in his white Cadillac CTS and pull the vehicle into the garage. Case agents observed KELLY approach the residence and further observed a black handle protruding outwards from KELLY's right side waistband, which case agents believe through their training and experience to be the handle of a firearm. KELLY thereafter entered the SUBJECT PREMISES.

13. On December 6, 2023, case agents conducted surveillance at the SUBJECT PREMISES. At approximately 9:47 p.m., KELLY was observed exiting the side door of the residence along with a child who appeared to be approximately 5 years old. KELLY and the child approached the GMC Yukon. KELLY was then observed re-approaching the side door of the SUBJECT PREMISES. Upon arriving at the door, KELLY proceeded to remove a black handgun from the right side of his waistband and began using the butt of the firearm to knock on the side door of the residence. The door opened and KELLY entered the residence for a short time before returning to the GMC Yukon and leaving the SUBJECT PREMISES driving the GMC.

### Criminal History

14. A check of Wisconsin Circuit Court Access revealed KELLY is convicted of two counts of Burglary-Building or Dwelling, in violation of Wisconsin State Statute 941.10(1m)(a) in Milwaukee County Case No. 2011CF007115, which is a felony offense. KELLY is therefore prohibited from possessing firearms.

## Search Warrant Executed at the SUBJECT PREMISES

15. On or about December 8, 2023, the Honorable Stephen C. Dries authorized a search warrant for the SUBJECT PREMISES.

16. On December 12, 2023, law enforcement officers executed the search warrant at the SUBJECT PREMISES. Officers were delayed in making entry into the residence because the occupants had moved a couch to block the front door. Upon entering the residence, KELLY was observed coming up from the basement. Officers also encountered Rivera and three young children in the residence.

17. Upon searching, officers observed water on the toilet seat and on the floor of the bathroom, along with a razor blade wrapped in what appeared to be a towel, and stray U.S. currency strewn about the bathroom floor. In the kitchen, law enforcement officers located and seized a black digital scale and a kitchen knife covered in white residue on the kitchen counter. The scale and knife were located on top of a dumbbell weight, which officers believe based on their training and experience can be used as makeshift drug press. Officers also located numerous open sandwich boxes and loose unused and used clear plastic sandwich bags on the kitchen counter and in a kitchen drawer. In the kitchen cabinet above the microwave, officers located a clear plastic bag containing a white powder substance, a Pyrex measuring cup with white residue, and baking soda. Officers also seized a loaded, silver-over-black, Smith and Wesson 9mm semi-automatic handgun, bearing Serial Number FBB3648, which was lying on the kitchen counter. KELLY's wallet was on the kitchen counter directly next to the firearm. Officers also located a small amount of marijuana and some loose ammunition from a

9

kitchen drawer. In the basement, officers located three blenders with white powder residue and another Pyrex measuring cup with white residue. Additionally, officers located digital scales in two of the vehicles and a small amount of white powder in a plastic bag in one of the vehicles. Based on their training and experience, case agents believe that the evidence located in KELLY's residence is consistent with him using the residence to manufacture controlled substances.

18. Officers subjected the seized white powder substances to field testing, which tests were inconclusive for the presence of controlled substances. The substances will be sent to the laboratory for further testing.

19. On the morning of December 12, 2023, KELLY stated that the firearm located in the SUJBECT PREMISES belonged to his girlfriend, Rivera. Rivera was questioned about the firearm, and she stated that the firearm was hers, that she purchased it, and that she knew KELLY had possession of it the previous few days. Rivera stated that KELLY would go into the basement and use the blender to mix controlled substances in the residence. Rivera further stated that when officers began knocking on the door, KELLY was in the bathroom, ran downstairs, and then ran back to the bathroom. Based on their training and experience, as well as the evidence gathered during the course of the investigation, case agents believe that KELLY flushed controlled substances down the toilet before law enforcement officers entered the premises.

20. KELLY was arrested on December 12, 2023 and was thereafter charged by criminal complaint on this same day with controlled substance and firearms offenses, in

10

violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. §§ 922(g)(1), 924(a)(8), and 924(c)(1)(A)(i). *See United States v. Montreal Kelly*, Case No. 23-M-517.

21. The firearm seized on December 12, 2023 from the residence believed to be KELLY's will be processed for fingerprints and DNA. When this firearms is processed the collected buccal swabs from the firearm will be submitted to a crime laboratory for further examination. A standard DNA sample from KELLY is needed for comparison and/or confirmatory purposes.

22. The two clear glass Pyrex bowls with suspected cocaine residue and electric blender with suspected cocaine residue, seized on December 12, 2023 from the residence believed to be KELLY's, will be processed for fingerprints and DNA. The collected swab will thereafter be submitted to a crime laboratory for further examination. Standard DNA samples from KELLY are needed for comparison and/or confirmatory purposes.

23. Your affiant and/or another law enforcement officer involved in this investigation propose to use a buccal swab DNA kit to obtain the DNA exemplar of KELLY until an adequate sample is obtained.

## CONCLUSION

31. Because this affidavit is only for the limited purpose of securing a search warrant, I have not set forth each and every fact known to me concerning this investigation. I have included what I believe are facts sufficient in establishing probable cause for the warrant sought.

32. Upon service, KELLY must provide the DNA sample forthwith.

33. Based upon the aforementioned, I believe that there is probable cause to

believe that on the person known as KELLY, in the Eastern District of Wisconsin, there is now concealed certain property, namely saliva and epithelial cells that are evidence of the crimes of Maintaining a Drug-Involved Premises, in violation of Title 21, United States Code, Section 856(a)(1); Felon in Possession of a Firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).